IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON RYAN, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 25-CV-10986 |
| | ) | |
| v. | ) | Honorable Matthew F. Kennelly |
| | ) | |
| OFFICER KAEDYN URBAN & | ) | |
| BRAIDWOOD POLICE DEPARTMENT, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## MOTION TO DISMISS

Defendants, Officer Kaedyn Urban and the Braidwood Police Department, by and through their attorneys, Leinenweber Daffada & Sansonetti, LLC, hereby submit their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and state as follows:

**I.  Background**

On September 11th, 2025, Aaron Ryan ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1983 against Officer Kaedyn Urban and the Braidwood Police Department ("Defendants"). *See* Dkt. No.1. Specifically, Plaintiff alleges that Defendants violated his Fourth Amendment rights when they subjected him to an unreasonable search and seizure. *Id*. at ¶ 12. Plaintiffs' entire Complaint rests on the idea that he was stopped and arrested without any reasonable suspicion to justify the stop. *Id*. at ¶¶ 13-17. However, the facts show that Plaintiff was stopped due to a FLOCK hit on his vehicle as a suspected missing person. Defendants respectfully request dismissal under Rule 12(b)(6) because Plaintiff fails to allege personal involvement, deliberate misconduct, or an actionable constitutional violation. Plaintiff's claims against Defendants fail as a matter of law and must be dismissed.

1

**II.     Facts**

On January 18th, 2025, at approximately 1:30 a.m., Stephanie (LNU)[1] reported her boyfriend, Plaintiff, missing to officers at the Marseilles Police Department. *Id*. at pg. 5. Stephanie (LNU) reported that she lived with Plaintiff and that he had been missing from their shared apartment since 11 a.m. the day prior. *Id*. at pg. 5. Stephanie completed a missing person's report which was later faxed to Ottawa Central Dispatch to be entered into LEADS[2]. *Id*. at pg. 5.

Later on, January 18th, at approximately 8:08 a.m. Ottawa Police officer Brett Wiedeman was dispatched to the area of Columbus St. and I-80 in reference to a FLOCK[3] alert. *Id* at pg. 6. A silver 2015 Chrysler 200, IL reg. EU81028 had triggered a FLOCK camera alert showing the vehicle's registered owner, Plaintiff, was entered into LEADS as a missing person. *Id*. at pg. 6. Officer Wiedeman then arrived at the dispatch location to find Plaintiff parked in the parking lot of Super 8, 500 E. Etna Rd. *Id*. at pg. 6. Officer Weideman approached the vehicle and met with Plaintiff, who identified himself with his IL driver's license. Weideman explained to Plaintiff that he was reported missing by his girlfriend. *Id*. at pg. 7. Plaintiff denied making any suicidal statements and advised Officer Weideman that he did not need any assistance. Officer Weideman ended the brief stop and advised dispatch to remove Plaintiff from LEADS as a missing person. *Id*. at pg. 7.

Later, at approximately 12:54 p.m., Defendant Officer Urban received a FLOCK hit for a missing person, 2015 silver Chrysler, IL reg. EU81028, traveling westbound through Wilmington Illinois. *Id*. at pg. 10. Defendant began traveling eastbound on Coal City Rd. to locate the suspected missing person. While doing so, Defendant Urban requested confirmation from WESCOM to

---

[1] Last Name Unknown
[2] Law Enforcement Agencies Data System, Illinois's statewide criminal-justice information network
[3] Flock Safety license-plate recognition system, a networked camera platform used by law enforcement to capture, store, and query license-plate images and associated vehicle data

confirm if the owner of the vehicle was still listed as missing. *Id*. at pg. 10. WESCOM[4] was unable to confirm and relayed that they would reach out to Marseilles to verify. As Defendant Urban was waiting for confirmation, he observed the suspected vehicle driving past him westbound on Coal City Rd. *Id*. at pg. 10.

Defendant Urban notified WESCOM that he would initiate a stop on the vehicle to confirm the safety of the individual while they confirmed with Marseilles PD. *Id*. at pg. 10. Defendant Urban turned around his vehicle to initiate a stop on Plaintiff, however another officer, Sergeant Peterson was already behind Plaintiff and initiated the stop. Defendant Urban and Sergeant Peterson observed Plaintiff as the sole occupant of the vehicle and began speaking with him. Plaintiff stated that his girlfriend had filed him as a missing person for no reason. At the same time, WESCOM was able to confirm that the missing person had been removed by Marseilles, but FLOCK had not removed it yet. *Id*. at pg. 10.

Sergeant Peterson requested Plaintiff's driver's license to confirm his identity and make sure there were no other issues. At that time, Plaintiff told the officers that his license was suspended and he was working on obtaining a permit. *Id*. at pg. 10. Defendant Urban requested WESCOM to perform a LEADS inquiry of Plaintiff's license and confirmed that Plaintiff had been suspended for 3-707(c)1 on December 6th, 2024. *Id*. at pg. 10. Defendant Urban then placed Plaintiff under arrest for driving while suspended. *Id*. at pg. 10.

### III. Legal Standard

The court may dismiss a claim pursuant to Rule 12(b)(6) if the plaintiff fails "to state a claim upon which relieve can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court accepts as true well-pleaded allegations and draws all rea- sonable inferences in

---

[4] West Suburban Consolidated Dispatch Center, a multi-agency 911 and police/fire dispatch consortium serving numerous western-suburban law-enforcement agencies in Illinois

a light favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal, the complaint must provide enough factual allegations to state a claim to relief that is plausible on its face and "raise a right to relief above the speculative level." *Id* at 555. Mere conclusions and a "formulaic recitation of a cause of action's element will not do." *Id*.; *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (courts will "not accept as true statements of law or unsupported conclusory factual allegations" ); see also, *e.g., Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1028 (7th Cir. 2024) ("A claim for relief must be plausible; it cannot be merely conceivable or speculative.") (citing *Ashcroft,* 556 U.S. at 679).

### IV. Argument

#### a. <u>Plaintiff Fails to State a Constitutional Violation Against Defendants</u>

To survive a motion to dismiss, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* 556 U.S. at 678 (2009). Here, Plaintiff alleges that officers violated his rights by stopping him based on an outstanding LEADS missing-person alert, but these allegations do not amount to a constitutional violation.

Here, both stops were based on an active LEADS missing-person alert, a database maintained by law enforcement precisely to enable officers to locate missing or endangered individuals. Under Illinois law, law enforcement is required to enter missing-person reports into LEADS immediately upon receipt of sufficient identifying information. *See* 20 ILCS 2605/2605-375; 325 ILCS 40/6; 325 ILCS 40/7. Courts have consistently held that reasonable suspicion for an investigatory stop is dependent upon the content of the information possessed by police and its degree of reliability. *See United States v. Adair*, 925 F.3d 931, 935 (7th Cir. 2019), *United States v*. *Hensley*, 469 U.S. at 229

4

Plaintiff alleges that the Defendant unconstitutionally stopped his vehicle, asserting that the stop constituted an unreasonable seizure because the Defendant failed to check whether the alert had been cleared or closed. This claim fails as a matter of law.

It is well established that law-enforcement officers may conduct a brief investigatory stop when acting in reliance on information contained in a law enforcement bulletin, flyer, or dispatch alert, provided that the information is based on articulable facts sufficient to create reasonable suspicion. *Hensley*, 469 U.S at, 231–32. The Supreme Court emphasized that officers are permitted to rely on bulletins issued by other jurisdictions without independently verifying the underlying facts, and that a stop is reasonable if the bulletin itself provides an objective basis for suspicion. *Id*.

Even absent criminal suspicion, police may stop or briefly detain individuals under the community-caretaking doctrine to ensure public safety. *Cady v. Dombrowski*, 413 U.S. 433, 441-42 (1973); *United States v. Harris*, 747 F.3d 1013, 1017-18 (7th Cir. 2014); *United States v. Smith*, 820 F.3d 356, 360 (7th Cir. 2016). Similarly, the emergency-aid exception permits officers to act when they reasonably believe a person may be injured or in danger. *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000).

A missing-person report clearly triggers both doctrines. It indicates that an individual may be at risk and requires immediate police attention. The stop here was precisely the type of brief, investigatory action these doctrines authorize.

Here, the defendant lawfully stopped Plaintiff's vehicle in response to a valid missing-person report, which included identifying information about the vehicle, specifically a direct LEADS hit on his license plate. The stop was therefore objectively reasonable, the officer had articulable facts from a law enforcement alert indicating that the vehicle might be connected to an

ongoing m atter. The fact that the officer did not independently verify whether the alert had been cleared does not render the stop unlawful. See *Hensley*, 469 U.S. at 231-32; *Ariz v. Evans*, 514 U.S. at 15-16.

The second stop, although conducted by a different department five hours later, also rested on the same LEADS alert and was justified until officers could verify the plaintiff's status. Moreover, during the second stop, officers independently discovered that the plaintiff was operating on a suspended license, providing additional probable cause.

An officer may lawfully initiate an investigatory stop when he has reasonable suspicion that a person may be missing or endangered. A LEADS/NCIC missing-person entry provides an objective, articulable basis for such suspicion. Plaintiff admits the officers relied on that alert and does not allege facts showing the alert was invalid or that the officers acted unreasonably in relying on it. Accordingly, Plaintiff does not plead the deprivation of any right protected by the Constitution.

### b. Qualified Immunity Bars Individual-Capacity Claims

Even assuming a constitutional violation occurred, which Plaintiff does not plausibly allege, Defendant Urban is entitled to qualified immunity. No clearly established precedent holds that stopping a person based on an active missing-person entry violates the Fourth Amendment, nor that officers must confirm removal from LEADS immediately after making initial contact. In the absence of such precedent, qualified immunity shields the officers as a matter of law.

For the reasons stated above as set forth in the Complaint, Defendant Urban had reasonable suspicion to initiate the traffic stop based on a LEADS alert and probable cause to arrest Plaintiff after his admission of a suspended license. Plaintiff's section 1983 claims cannot withstand a motion to dismiss because the Defendant did not violate his constitutional rights and, even if they

did, the right was not clearly established at the time and under the circumstances alleged in the complaint. Consequently, the Defendant is entitled to qualified immunity.

### c. The Braidwood Police Department is Not a Suable Entity

A defendant named in a lawsuit must have the legal capacity to be sued. *Fed. R. Civ. P. 17(b)*. To determine whether an entity has the legal capacity to be sued under Rule 17(b), federal courts look to the state law where the court is located. *Fed. R. Civ. P. 17(b)*. In Illinois, a defendant must have a legal existence in order to be sued. *Jackson v. Village of Rosemont*, 180 Ill. App. 3d 932 (1st Dist. 1988). Illinois courts do not recognize police departments as legal entities. *West By and through Norris v. Waymire*, 114 F.3d 646, 646-647 (7th Cir. 1997) (naming the Town's police department in a suit for damages under 42 U.S.C. § 1983 "adds nothing; it is almost certainly not a suable entity separate from the town."). Instead, police departments are considered departments or "organizational divisions" of the municipalities to which they serve. *Jordan v. Chicago, Dep't of Police*, 505 F.Supp. 1, 3 (N.D. Ill. 1980); *See* e.g., *Wemple v. Illinois State Police*, 2005 U.S. Dist. LEXIS 18189 (C.D. Ill. 2005).

Accordingly, Illinois police departments are not suable entities. *Id*. As a result, when a plaintiff names a police department as a defendant, the court must dismiss the plaintiff's claims with prejudice because such a defendant lacks the capacity to be sued. *Doe v. City of Chicago*, 883 F.Supp.1126, 1133 (ND. Il. 1994) (plaintiff's claims against the police department were dismissed because the police department is not a suable entity.); *See e.g., Wemple*, 2005 U.S. Dist. LEXIS 18189 at 8-9 (because the police department is not a separate legal entity and cannot be sued under 42 U.S.C. § 1983, plaintiff's claims against it must be dismissed with prejudice.). Based upon these principles, Plaintiff's claims against the Braidwood Police Department must be dismissed with prejudice. The Police Department is not a legal entity that can be sued; rather, it is a department or

"organizational division" of the City of Braidwood. Accordingly, Plaintiff fails to state a claim against the Police Department.

### d. Claim Against Braidwood Must Be Dismissed for Lack of a Monell Allegation

Plaintiffs seek to hold Defendant Braidwood Police Department, a municipality, liable under 42 U.S.C. § 1983 for violating their Fourteenth Amendment equal protection rights and their right to be free from illegal seizures under the Fourth Amendment.

Under 42 U.S.C. § 1983, a person may sue anyone who, while acting under color of law, causes him to be deprived of any of his constitutional rights. 42 U.S.C. § 1983; *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1358-59, 179 L. Ed. 2d 417 (2011). A municipality can be held liable under § 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy," causes the constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

A municipality cannot be held liable solely on a respondeat superior basis. *Id*. at 691. The Seventh Circuit recognizes three paths to municipal liability: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995))

Consistent with the post-*Iqbal* pleading standard, the Seventh Circuit has held that to state a Monell claim a plaintiff must plead "factual content that allows the court to draw the reasonable

inference" that the municipality maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Mere "legal conclusions or elements of the cause of action" must be disregarded. *Id*. at 617. Thus, "boilerplate" statements that repeat the elements of a Monell claim without any further factual content have been dismissed for failure to state a claim. *See*, e.g., *Falk v. Perez,* 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013).

Plaintiff alleges none of these. He pleads no policy, practice, or custom regarding stops based on alerts, and no policymaker involvement is alleged. The Seventh Circuit routinely dismisses municipal defendants where, as here, a complaint merely lists a police department without alleging a Monell theory. *Id*. at 616-18. Accordingly, the Braidwood should be dismissed with prejudice.

### V. Conclusion

WHEREFORE, for the forgoing reasons, Defendants Braidwood Police Department and Officer Urban respectfully request that his Honorable Court grant their motion to Dismiss Plaintiff's Complaint and grant any other relief deemed just by this Honorable Court.

Dated: December 2, 2025                    Respectfully Submitted,

*Attorney for Kaedyn Urban, and the Braidwood Police Department*

/s/ Thomas M. Leinenweber

Thomas M. Leinenweber
John R. Stortz
120 North LaSalle Street
Suite 2000
Chicago, IL 60602
(312) 663-3003
thomas@ilesq.com

9

jrs@ilesq.com

**CERTIFICATE OF SERVICE**

      I, John Stortz, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Monday, December 2, 2025, I electronically filed the foregoing Notice of Motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

                                                                /s/ John R. Stortz
                                                                John R. Stortz